**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSISSIPPI**

**IN RE:**

**JOE L. NUTALL AND**
**BARBARA MOORE,** **CASE NO. 11-15665-NPO**

**DEBTORS.** **CHAPTER 13**

**MEMORANDUM OPINION AND ORDER DENYING**
**DEBTOR'S AMENDED MOTION FOR ATTORNEY'S FEES AND SANCTIONS**

There came on for hearing on October 11, 2012 (the "Sanctions Hearing"), the Debtor's Amended Motion for Attorney's Fees and Sanctions (the "Amended Motion for Attorney's Fees and Sanctions") (Dkt. 78) filed by Joe L. Nutall ("Nutall") and Barbara Moore (together, the "Debtors"), and National Capital Management, LLC's Response to Debtors' Amended Motion for Attorney's Fees and Sanctions (Docket No. 78) (the "Response to Amended Motion for Attorney's Fees and Sanctions") (Dkt. 80) and National Capital Management, LLC's Supplemental Response to Debtors' Amended Motion for Attorney's Fees and Sanctions (Docket No. 78) (the "Supplemental Response to Amended Motion for Attorney's Fees and Sanctions") (Dkt. 83) filed by National Capital Management, LLC ("NCM"), successor-in-interest to Santander Consumer USA, Inc. ("Santander"), successor-in-interest to Drive Financial Services ("Drive"), in the above-styled bankruptcy case. At the Sanctions Hearing, Arnold D. Lee represented the Debtors, and Matthew A. Davis ("Davis") represented NCM.

**Jurisdiction**

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O). Notice of the Amended Motion for Attorney's Fees and Sanctions was proper under the circumstances.

## Facts

1. On June 5, 2007, Nutall and Latoya Day ("Day") entered into a "Retail Installment Contract and Security Agreement" (the "Agreement") with Metro Imports LLC d/b/a Metro Mitsubishi ("Metro Imports") for the purchase of a 2006 Pontiac Grand Prix ("Grand Prix"). (Dkt. 14 at Ex. A). According to the terms of the Agreement, Nutall and Day agreed to "give [Metro Imports] a security interest in the [Grand Prix]." (*Id.*). Additionally, the Agreement obligated Nutall and Day to pay Metro Imports the principal amount of $19,000.48, plus interest at 21%, in monthly installments of $470.04 for a total of 72 months. (*Id.*).

2. On June 5, 2007, the Agreement was assigned to Drive. (Dkt. 14 at Ex. A).

3. On July 20, 2007, a "Certificate of Title" (the "Title") was issued to Nutall and Day for the Grand Prix. (Dkt. 14 at Ex. A). The Title listed Drive as the first lienholder on the Grand Prix. (*Id.*).

4. On March 5, 2007, Drive "was acquired by, merged into or otherwise changed its name to Santander." (Dkt. 14 at 1).

5. "On May 10, 2011[,] Santander sold, transferred and otherwise assigned to NCM all of its right, title and interest in" the Agreement. (Dkt. 14 at 1).

**Bankruptcy Case**

6. On December 8, 2011, the Debtors filed a voluntary petition (the "Petition") for relief under chapter 13 of the United States Bankruptcy Code[1] (the "Bankruptcy Case"). (Dkt. 1).

7. On December 8, 2011, the Debtors filed their bankruptcy schedules (the "Schedules"). (Dkt. 1). In Schedule F - Creditors Holding Unsecured Nonpriority Claims, the

[1] Hereinafter, the "Code" refers to the United States Bankruptcy Code found at Title 11 of the United States Code, and all code sections refer to the Code unless otherwise noted.

Debtors listed Nowcom/Title 11 Funding of CA ("Nowcom") as an unsecured creditor.[2] (*Id.* at 22). Schedule F provided that Nowcom's claim was for the Grand Prix "IN CODEBTOR'S POSSESSION." (*Id.*). In Schedule H - Codebtors, Day was listed as a co-obligor on the Nowcom claim. (*Id.* at 24). As previously mentioned, Day was a co-signor with Nutall on the Agreement to purchase the Grand Prix. (Dkt. 14 at Ex. A). Day, however, is not a debtor in the Bankruptcy Case.

8. On December 8, 2011, the Debtors also filed their Chapter 13 Plan (the "Plan"). (Dkt. 6). In the Plan, the Debtors stated that they intend "to surrender [their] interest in [the Grand Prix]" and treat Nowcom's claim as an unsecured claim toward which Day will make payments. (*Id.* at 2).

9. On January 18, 2012, NCM filed a proof of claim (the "Proof of Claim") (Cl. No. 5-1) in the Bankruptcy Case. The Proof of Claim listed the amount of the debt owed by the Debtors to NCM as $22,962.92. (*Id.*). On the Proof of Claim, NCM checked the box indicating that the entire amount of the claim was secured by a lien on a "Motor Vehicle" and stated that the lien was perfected by a "Mississippi Certificate of Title." (*Id.*). NCM attached copies of the Agreement and the Title to the Proof of Claim. (*Id.*).

10. On January 19, 2012, NCM, represented by Candace Cooper Blalock ("Blalock"), filed National Capital Management, LLC's Objection to the Debtors' Proposed Chapter 13 Plan Prior to Confirmation (the "Objection") (Dkt. 14). In the Objection, NCM argued that the Plan does not comply with the requirements of § 1325(a)(5)(C) as the Debtors are not in possession of the Grand Prix and, therefore, cannot deliver the Grand Prix to NCM, as is required to "surrender[] . . . property securing [a] claim to such holder" under § 1325(a)(5)(C). (*Id.* at 2).

---

[2] In their Schedules, the Debtors indicate that the Nowcom claim is a joint debt, however, Barbara Moore was not a party to the Agreement. (Dkt. 1 at 22).

11. On April 2, 2012, the Court entered an Order for Continuance (Dkt. 23) of the hearing on the Objection to May 31, 2012.

12. Prior to the hearing on the Objection, on April 23, 2012, Blalock filed a Motion to Withdraw (Dkt. 26) as counsel for NCM in the Bankruptcy Case. On May 31, 2012, an Agreed Order to Withdraw (Dkt. 36) was entered whereby Keri Henley, from the law firm of Henley, Lotterhos & Henley, PLLC, was substituted as counsel for NCM in the Bankruptcy Case.

13. On May 29, 2012, the Debtors' Response to National Capital Management, LLC's Objection to the Confirmation the Debtor's Proposed Ch. 13 Plan (the "Response") (Dkt. 32) was filed.

14. On May, 31, 2012, a hearing was held on the Objection and the Response (the "May Hearing"). Keri Henley represented NCM at the May Hearing. At the May Hearing, the Court denied the Objection and, subsequently, on June 12, 2012, an Order (Dkt. 39) overruling the Objection was entered.

15. On June 18, 2012, an Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders (the "Confirmation Order") (Dkt. 42) was entered.

16. Thereafter, on June 26, 2012, Davis, another attorney with Henley, Lotterhos & Henley, PLLC, filed on NCM's behalf the National Capital Management, LLC's Motion to Reconsider the Order (i) Overruling its Objection to Debtors' Chapter 13 Plan and (ii) the Order Confirming the Chapter 13 Plan (the "Motion to Reconsider") (Dkt. 44). In the Motion to Reconsider, NCM alleged that the Order and the Confirmation Order were erroneous as they "run afoul of what is legally required [to surrender property] under § 1325(a)(5)(C), which . . . provides - and indeed mandates - a debtor surrender *the property* that secures a claim *to the holder* of that claim." (*Id*. at 2).

17. On July 19, 2012, a Motion for Entry of Appearance Pro Hac Vice (Dkt. 47) was filed by Davis requesting that Matthew J. McGowan ("McGowan") be admitted to practice before this Court *pro hac vice*. On July 23, 2012, an Order Admitting Attorney Proc Hac Vice (Dkt. 57) was entered.

18. On July 19, 2012, NCM filed a Motion to Appear by Phone at Hearing on National Capital Management, LLC's Motion for Reconsideration (the "Motion to Appear by Phone") (Dkt. 48). On July 25, 2012, an Order Denying Motion to Appear by Phone at Hearing on National Capital Management, LLC's Motion for Reconsideration (Dkt. 61) was entered whereby this Court, based in part on its finding that "telephonic participation in the Motion [to Reconsider] would not be in the best interest of the parties and the Court given the potential length of the hearing and the complexity of the issues," denied the Motion to Appear by Phone.

19. Also on July 19, 2012, NCM filed National Capital Management, LLC's Motion to Continue (Dkt. 49) requesting that the hearing on the Motion to Reconsider be continued "to a date after July 30, 2012." On July 25, 2012, an Order on National Capital Management, LLC's Motion to Continue (Dkt. 59) was entered whereby this Court continued the hearing on the Motion to Reconsider to August 9, 2012, at 11:00 A.M. in Greenville in order to accommodate McGowan.

20. On July 23, 2012, the Debtors filed Debtor's Motion for Extension to File Response to Creditor's Motion to Reconsider. (Dkt. 56). On July 25, 2012, an Order (Dkt. 60) extending the deadline for the Debtors to file a response to the Motion to Reconsider to August 6, 2012, was entered.

21. On August 6, 2012, the Debtor's Response in Opposition to Creditor's Motion to Reconsider (the "Response to Motion to Reconsider") (Dkt. 66) was filed. In the Response to

Motion to Reconsider, the Debtors argued it was not a "manifest error of law" for this Court to hold that "surrender," as defined in § 1325(a)(5)(C), does not require the Debtors to deliver possession of the Grand Prix to NCM. (*Id.* at 1-2). In fact, according to the Debtors, this Court was correct when it overruled the Objection as "the Code draws a distinction between delivering and surrendering property." (*Id.* at 2-3). Finally, in addition to requesting that this Court deny the Motion to Reconsider, Debtors' counsel requested that he be awarded his attorney's fees, "and . . . any other relief [to] which he may be entitled." (*Id*. at 6).

22. On August 9, 2012, a hearing was held on the Motion to Reconsider and the Response to Motion to Reconsider (the "Hearing on the Motion to Reconsider"). Neither Davis nor McGowan appeared at the required time and place.[3] (*See* Dkt. 67) Thereafter, on August 13, 2012, an Order Denying National Capital Management, LLC's Motion to Reconsider the Order (I) Overruling its Objection to Debtors' Chapter 13 Plan and (II) the Order Confirming the Chapter 13 Plan (the "Order Denying the Motion to Reconsider") (Dkt. 67) was entered whereby, "[b]ecause Davis was properly noticed of the Hearing [on the Motion to Reconsider], but failed to appear," the Court denied the Motion to Reconsider. (*Id*. at 2). In the Order Denying the Motion to Reconsider, the Court did not rule on Debtors' counsel's request for attorney's fees.

23. On August 15, 2012, the Debtors filed the Debtor's Motion for Attorney's Fees and Sanctions (the "Motion for Attorney's Fees and Sanctions") (Dkt. 69). In the Motion for Attorney's Fees and Sanctions, Debtors' counsel claimed he "spent significant amounts of time briefing and drafting" the Response to the Motion to Reconsider, and preparing for the Hearing on the Motion to Reconsider which counsel for NCM failed to attend. As a result of counsel for NCM's failure to appear, he asked that this Court, "pursuant to 11 U.S.C. § 105 and F.R.B.P.

[3] Davis appeared at the Jackson Courthouse at 10:00 A.M., and not at the Greenville Courthouse at 11:00 A.M., for the Hearing on the Motion to Reconsider.

9011 award attorney's fees/sanctions against NCM for wasting the Court's and Debtor's time and needlessly increasing the cost of [the Debtors'] bankruptcy."

24. On September 13, 2012, the Amended Motion for Attorney's Fees and Sanctions (Dkt. 78) was filed. In the Amended Motion for Attorney's Fees and Sanctions, Debtors' counsel contended that the Motion to Reconsider was frivolous as it simply "assert[ed] the same arguments the Court . . . sternly rejected" at the May Hearing. (*Id*. at 1). Debtors' counsel reiterated that he "spent significant amounts of time briefing and drafting" the Response to the Motion to Reconsider, and he appeared at the Hearing on the Motion to Reconsider ready to proceed. (*Id*. at 2). Despite having notice of the date, time and location of the Hearing on the Motion to Reconsider, neither Davis nor McGowan appeared. (*Id.*). As a result of NCM's actions, pursuant to § 105, Debtors' counsel requested that this Court award him reasonable attorney's fees of $2,664.00[4] and sanction NCM. (*Id.* at 2-3).

25. On September 14, 2012, the Response to Amended Motion for Attorney's Fees and Sanctions (Dkt. 80) was filed. In the Response to Amended Motion for Attorney's Fees and Sanctions, NCM stated that it was not served with a copy of the Motion for Attorney's Fees and Sanctions prior to its filing as is required by Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011"). (*Id.* at 2). As a result, on August 30, 2012, NCM sent Debtors' counsel a "safe harbor"

---

[4] In support of his request for attorney's fees, attached to the Amended Motion for Attorney's Fees and Sanctions, Debtors' counsel included an itemized invoice of legal services rendered in connection with the Motion to Reconsider. (Dkt. 78 at Ex. 1). According to the itemized invoice, Debtors' counsel spent 14.4 hours, at a rate of $185.00 per hour, researching and drafting the Response to the Motion to Reconsider and preparing for the Hearing on the Motion to Reconsider. (*Id.*). Additionally, Debtors' counsel attached to the Amended Motion for Attorney's Fees and Sanctions an Affidavit for Attorney's Fees (Dkt. 78 at Ex. 2) and the Declaration of John Hughes (the "Declaration") (Dkt. 78 at Ex. 3). In the Declaration, John Hughes, an attorney engaged in the practice of law in Mississippi, stated that given Debtors' counsel's experience, his hourly fee of $185.00 was reasonable "and falls within the range that exists in the Northern District of Mississippi's legal market." (Dkt. 78 at Ex. 3).

letter advising Debtors' counsel that the Motion for Attorney's Fees and Sanctions was filed in violation of Rule 9011 "and that NCM would file its own motion for sanctions within 21 days if" the Motion for Attorney's Fees and Sanctions was not withdrawn. (*Id.*). Thereafter, the Debtor filed its Amended Motion for Attorney's Fees and Sanctions. (*Id.* at 3).

26. On October 1, 2012, the Supplemental Response to Amended Motion for Attorney's Fees and Sanctions (Dkt. 83) was filed. In the Supplemental Response to Amended Motion for Attorney's Fees and Sanctions, NCM asserted that this Court may not award attorney's fees to Debtors' counsel or sanction NCM pursuant to § 105 alone as this Code provision "is not an independent, free-standing grant of authority permitting a bankruptcy court to fashion a remedy absent a discernable statutory nexus or co-extensive relationship with some other Bankruptcy Code provision." (*Id*. at 2).

**The Hearing**

27. On October 11, 2012, the Sanctions Hearing was held.

28. At the Sanctions Hearing, Debtors' counsel stated that he filed the Amended Motion for Attorney's Fees and Sanctions based in part upon NCM's "frivolous" arguments in their Motion to Reconsider which Debtors' counsel described as "a gross misrepresentation of the law."[5] Additionally, Debtors' counsel insisted that NCM needlessly wasted his time and his client's time and "increas[ed] the cost of his bankruptcy" by failing to show up at the Hearing on the Motion to Reconsider.[6] Debtors' counsel stated that he did not "necessarily believe" that

[5] Arg. of Lee at 0:06:04-0:06:39. The Hearing was not transcribed. References to the arguments of counsel are cited by the timestamp of the audio recording.

[6] *Id.* at 0:09:03-0:09:33.

NCM's actions amounted to bad faith.[7] As a result, Debtors' counsel did not "advance[e] [the argument] that [NCM] was acting in bad faith."[8]

29. According to Debtors' counsel, he originally filed his Motion for Attorney's Fees and Sanctions, pursuant to § 105 and Rule 9011. He conceded that he amended his motion because the reference to Rule 9011 "was procedurally flawed."[9]

30. Debtors' counsel confirmed that he is seeking his attorney's fees and sanctions against NCM and not NCM's counsel.[10]

31. In response, Davis argued that § 105, standing alone, is not a sufficient ground to award attorney's fees or sanctions, but that § 105 must be coupled with another provision of the Code or the Rules.[11] Davis remarked that Debtors' counsel was correct the first time when he combined his request for attorney's fees and sanctions under both Rule 9011 and § 105. Debtors' counsel was unable to make this argument at the Sanctions Hearing because he did not send a 21-day "safe harbor" letter. [12]

[7] *Id.* at 0:12:22-0:14:10.

[8] *Id.*

[9] *Id*. at 0:09:40-0:09:54.

[10] *Id.* at 0:16:01-0:16:58.

[11] Arg. of Davis at 0:19:15-0:20:13. Davis remarked that he was confused about where to appear for the Motion to Reconsider because Keri Henley was allowed to appear at the Jackson Courthouse for the May Hearing. The Order on National Capital Management, LLC's Motion to Continue (Dkt. 59), however, clearly stated the Hearing on the Motion to Reconsider was set for August 9, 2012, at 11:00 A.M. in Greenville. As noted previously, Davis appeared not only at the wrong place, but also at the wrong time.

[12] *Id.* at 0:20:07-0:20:44.

32. Finally, Davis argued that it was he, and not NCM, who failed to appear at the Hearing on the Motion to Reconsider. According to Davis, if attorney's fees and sanctions should be awarded, they should be awarded against him personally, rather than NCM.[13]

**Discussion**

In the Amended Motion for Attorney's Fees and Sanctions, Debtors' counsel requests that this Court "award attorney's fees/sanctions against NCM for wasting the Court's and Debtor's time and needlessly increasing the cost of his bankruptcy" based solely upon this Court's powers under § 105. It is not entirely clear from either the Amended Motion for Attorney's Fees and Sanctions, or Debtors' counsel's arguments at the Sanctions Hearing, what actions of NCM Debtors' counsel believes are sanctionable. The Court remarked at the Sanctions Hearing that it understood Debtors' counsel's request for attorney's fees and sanctions to be based upon the totality of NCM's conduct in the Bankruptcy Case. Debtors' counsel stated in the Amended Motion for Attorney's Fees and Sanctions that at the May Hearing, this Court "sternly rejected NCM's arguments" that surrender under § 1325(a)(5)(C) required that the Debtors physically deliver the Grand Prix to NCM. Thereafter, however, NCM filed a Motion to Reconsider in which it stated that this Court was "manifestly in error" when it overruled its Objection. According to Debtors' counsel, he spent a significant amount of time researching and writing the Response to the Motion to Reconsider, and preparing his arguments for the Hearing on the Motion to Reconsider. Yet, counsel for NCM failed to appear. Given NCM's conduct in the Bankruptcy Case, Debtors' counsel believes he is entitled to an award of attorney's fees and sanctions against NCM pursuant to § 105.

---

[13] *Id.* at 0:33:25-0:34:05.

Section 105(a) provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. At present, there is a split among courts as to the breadth of § 105. 2 *Collier on Bankruptcy* ¶ 105.01[2] (16th ed. 2011). Some courts hold that § 105 "is not a broad writ, and should be narrowly construed." *Id*. The majority of courts, however, apply § 105 broadly "as granting the bankruptcy courts authority to fill the gaps left by the statutory language" of the Code. *Id.* The Fifth Circuit Court of Appeals (the "Fifth Circuit") has held that § 105 should be "interpret[ed] . . . liberally." *See, e.g.*, *Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746, 760 (5th Cir. 1995).

"One of the primary functions of § 105(a) is to 'prevent an abuse of process.'" *In re Jacobsen*, No. 07-41092, 2009 WL 3245418, *13 (Bankr. E.D. Tex. Sept. 30, 2009) (quotation omitted). In cases where there has been an abuse of process, § 105(a) grants bankruptcy courts the authority to impose "necessary and appropriate" sanctions, including attorney's fees. *In re Brown*, 444 B.R. 691, 694 (Bankr. E.D. Tex. 2009). The Code does not define what an "abuse of process" is. *In re Batiste*, No. 03-10398, 2009 WL 2849077 (Bankr. E.D. La. July 14, 2009). The RESTATEMENT (SECOND) OF TORTS, however, defines an "abuse of process" as when '"one . . . uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed.'" *Jacobsen*, No. 2009 WL 3245418, *13 (citing RESTATEMENT (SECOND) OF TORTS § 682 (1972)).

Bankruptcy courts, like other federal courts, also have the inherent power to impose sanctions for abuses of process. *In re Osborne*, 375 B.R. 216, 226 (Bankr. M.D. La. 2007). Some courts have held that § 105 simply codifies the inherent authority to issue sanctions held by all federal courts as acknowledged by the U.S. Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). *St. Stephen's 350 East 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004); *see*

*also Jones v. Bank of Santa Fe* (*In re Courtesy Inns, Ltd.*), 40 F.3d 1084 (10th Cir. 1994) (holding "that § 105 [was] intended to imbue the bankruptcy courts with the inherent power recognized by . . . *Chambers*"). Other courts have treated § 105 and bankruptcy courts' inherent authority as separate but interrelated grants of power. *See In re Paige*, 365 B.R. 632, 637 (Bankr. N.D. Tex. 2007) (citation omitted) (finding that "a bankruptcy court's authority under section 105 comports with its inherent power to sanction"). As a result, many of the bankruptcy courts in the Fifth Circuit that have addressed the issue, have held that regardless of whether a bankruptcy court imposes sanctions for an abuse of process pursuant to its powers under § 105 or its inherent authority, it must make a specific finding of bad faith. *See, e.g.*, *Jacobsen*, 2009 WL 3245418, *14 (citations omitted); *see also In re Pastran*, 462 B.R. 201, 210 (Bankr. N.D. Tex. 2011) (quotation omitted) (holding that "regardless of whether a bankruptcy court chooses to impose sanctions under its inherent authority or under [§ 105(a)] it still must make a 'specific finding of bad faith'"). At least one bankruptcy court in the Fifth Circuit, however, has awarded sanctions even where the court found that the sanctioned party did not act in bad faith. *Brown*, 444 B.R. at 695 (finding that the standard for the imposition of sanctions under § 105 was bad faith, but awarding sanctions anyway against a party who "acted with reckless disregard of their duty" to the court).

This Court assumes that Debtors' counsel is seeking attorney's fees and sanctions against NCM based upon an abuse of process.[14] According to many of the foregoing authorities, a finding of bad faith is required to make such an award. At the Sanctions Hearing, Debtors' counsel would not definitively assert that NCM or its counsel acted in bad faith. *See supra* p. 8.

[14] Whether counsel for NCM's failure to attend the Hearing on the Motion to Reconsider was in contempt of the Order on National Capital Management, LLC's Motion to Continue was not raised in the Amended Motion for Attorney's Fees and Sanctions. Therefore, this argument will not be addressed by this Court.

Without a clear accusation of bad faith, this Court is not willing to make such a finding. Even still, if the standard for the imposition of attorney's fees or sanctions is not bad faith, but is instead the lesser "reckless disregard" standard, this Court is not willing to find that NCM or its counsel acted with "reckless disregard of their dut[ies]" to this Court if the arguments of Debtors' counsel may be characterized as accusing NCM or its counsel of this type of conduct. The facts simply do not support such a finding. Although this Court certainly does not approve of NCM's actions in the Bankruptcy Case, it does not find an award of attorney's fees or sanctions under the legal theory offered by Debtors' counsel is appropriate.

**Conclusion**

Based on the foregoing, the Amended Motion for Attorney's Fees and Sanctions should be denied.

IT IS, THEREFORE, ORDERED that the Amended Motion for Attorney's Fees and Sanctions is hereby denied.

SO ORDERED.

Neil P. Olack
United States Bankruptcy Judge
Dated: November 21, 2012